Good morning, Your Honors. I'm Kathleen Bliss on behalf of Don Eugene White. I'd like to reserve two minutes, please, of my time. There are two key points to this appeal as it now in the first place. Here, the police reasonably, I submit, ran license plates. They ran the license plate on a Dodge Charger that's parked in a Walgreens parking lot. They get a hit. It's unclear from the record exactly how that hit came up, but it was called a Don's 5 hit, which is for felony fugitive warrants. They parked behind it to block it in so that Dodge Charger was no longer mobile. Officer Chard went to the driver's side of the door, and the window was rolled down, and Don White, sitting in the passenger's side, handed the officer his driver's license and registration, according to Mr. White in his testimony. So, Lee, I want to understand your argument. Yes, Your Honor. You don't contest that it was reasonable, at least for some period of time, for the officers to prevent Mr. White from leaving? I do not, Your Honor. When the — do you contest that that period at least extended to the time when they went and got his identification? Yes. At that point — I'm always skeptical of these, but we take the record as it comes to us — the officers say they detected odor of marijuana. That's correct, Your Honor. Does that give them, at that point, whether or not Mr. White is the person for whom the warrant is outstanding, does that give them a probable cause to detain him? No, not based upon the smell. Why not? Why not? Because — I mean, for better or worse, it's still a Federal crime to possess marijuana. It is a Federal crime, but these were State officers, Your Honor, and — They're not entitled to enforce Federal law? No. And there is a Ninth Circuit decision — well, we don't know if they were cross-deputized to do so. There's nothing in the record that would indicate that. And there is a Ninth Circuit case out there, and I do have the site, and I can supplement it, if I may, with the Court's permission. It's U.S. v. $186,416. It goes to that precise issue of State officers trying to, in quote, enforce Federal law. Did you make that argument, though, to us about cross-enforcement? About? I'm sorry? Cross-enforcement, the absence of evidence of cross-enforcement. That argument was never made by anyone, Your Honor. Okay. The record is silent on it. Okay, so focus on Nevada law for a moment. Even though there's a medical marijuana — Yes, Your Honor. — statute in Nevada, it's illegal to possess marijuana for non-medical purposes under State law, right? Well, as — At that time. Yes, absolutely. At that time. At that time. And Mr. White doesn't say to the officers, I have a medical marijuana card? Your Honor, I would submit it was not his burden to do that. I'm not — that's not the question I'm asking. The question — he does not say that to them, does he? He — no, he did not say that. And I would submit it is not his burden. The Fourth Amendment protects — It's not his burden, but in the absence of that, he's committing a crime, and there's probable cause to believe that he's committing a crime. Your Honor, smelling like pot is not a crime. Even the law enforcement officers recognized that — And being covered in blood is not a crime either, but it may suggest that some other crime has taken place. Your Honor — But I think the question seems to be whether or not odor alone, odor of marijuana, can give rise to probable cause. Exactly, Your Honor. And what's your position on that? No. My position is no, and here's why. Well, does it give rise to reasonable suspicion? It could give reasonable — give rise to reasonable suspicion to pursue more. However, we're talking about once we go to the next segment of the issues that we've raised here, we're going to probable cause under the automobile exception to search that vehicle. Unlike the cases that were cited by the magistrate judge, one, the government's binding case law from a 1977 case, you can look to that case. That's the Garcia-Rodriguez case. You can look to that case and see it is so inopposite to what we have here. You had surveillance. You had a vehicle on the border. You had so much more. You've got other cases in which you have plain view. Here, you had Don White identifying himself. The officers admit they ruled out that he was Eddie Ray Johnson. Counsel, you're moving off of a question, I think. Why is plain smell any different than plain sight or plain hearing? Because the odor is so subjective, and the odor is — could be anything. It could be the perfume I'm wearing that someone mistakens for the smell. Well, yes, but, I mean, looking at something in plain view, you could mistake a toy gun for a real gun. You could make mistakes. But I guess I don't understand why one sense is, as a matter of law, more appropriate than another. Because in plain view, you actually have a tangible object. You can take pictures of it. You can see it. Others can see it. With an odor — And what about plain hearing, hearing someone say something? That works, too. Of course, odor lingers for a while after the object is removed, I assume. I don't know what the length of time is, but do you have any cases on whether odor alone can give rise to probable cause in any situation? Either way, yes or no? Alaska has decided that odor alone is not enough. And I did cite that in a 28J. I believe that case is called Crocker. When you say Alaska, you mean Alaska Supreme Court? Yes, Your Honor. I'm sorry. And then you have in Arizona, you've got Cisco I and Cisco II. Cisco I was cited by the magistrate judge as well as the district court judge here. Notably, the district court judge did not cite Garcia-Rodriguez, the 1977 Ninth Circuit case. Only the magistrate did. Let me ask you a slightly different question. Of course, Your Honor. I'm not sure you're arguing this. Let's assume, for purposes of discussion, that there was probable cause or reasonable suspicion to take Mr. White out of the car. He's handcuffed at that point, correct? I don't think there was probable cause to do that. Okay. I didn't — that's not my question. Listen to my question. Okay. Yes, Your Honor. My question was, let's assume there was probable cause to take him out of the car and handcuff him. Do you challenge then the warrantless search of the car? I don't see in your briefing a separate challenge to the warrantless search of the car at that point. It strikes me that none of the reasons that support a warrantless car search at that point are extant. We're not worried about him destroying the marijuana. We're not worried about him having access to something in the car. So I look through your briefing, I think in vain, in finding that argument. Am I right that you don't make that argument? Your Honor, I would submit that we do make that argument. Where? Tell me where in your briefing. In the entire first section of it, we argue that he was detained too long, of course, and then we argue that there was not probable cause to search the car. Right. I understand both of those things, but I've asked you to assume that there was probable cause to search the car. My question is, do you make a separate argument that they should have obtained a warrant before searching the car? Yes. No, I don't make that argument. Okay. And no, yes, I understand what you're saying. No, I do not make that argument. Now, in fact, they did go get a warrant, but notably, as the Court will see from the record, the State or the Federal Government backed off of that because of some credibility issues with the affiant, Officer Kitchen. So the search warrant that was obtained to search the car was never pursued by the government. They abandoned it. The search ---- The government treats this as if it were a warrantless search. Exactly. And so the ---- but you don't make an argument that the absence of a warrant, valid or otherwise, is the reason for suppression here. No. The automobile exception failed. It ---- there was not probable cause. Thank you, counsel. If you want to save any rebuttal time, you're almost out of time. Yes, Your Honor. I will save my time then. Thank you. Good morning. May it please the Court. Elizabeth White for the United States. Before I begin, I want to point out an error in the government's brief. On page 41 in a footnote, we inadvertently cited Rouse v. Pampert, which was an unpublished decision of this Court in 2002. We know that the rules prohibit citing unpublished decisions prior to 2007, and we just didn't catch that in the editing process. So I apologize for that, but we'd like to withdraw that citation. The ---- this Court has held in Garcia Rodriguez, this 1977 case, and again in Guzman Padilla that ---- in Guzman Padilla, what the Court said is that it's undisputed that probable cause to conduct a search arises when the agents encounter the smell of marijuana coming from the car. With respect to this issue about smells are different because they're so subjective, that really comes down to a question of witness credibility. The magistrate judge held an evidentiary hearing where both officers testified and the defendant himself testified. And in this case, it's sort of strange because one of the defenses is I have a medical marijuana card, so it's not improbable that there was some smell coming from Mr. White. And to that, I would go to the point about Nevada law, because first of all, under Nevada law, even after the medical marijuana scheme was put into place, Nevada held in 2013 in State v. Lloyd that the smell of marijuana coming from a car provides probable cause to search the car, even after ---- That be true today under the new Nevada law? I ---- that is a much more interesting question. That's why I asked. And I don't ---- and I haven't had a case where we've had to research or argue that particular one. Arizona says yes. I think Alaska has said no. I don't think Nevada has had an opportunity to speak to it one way or the other. I mean, I think that what the ---- what the district court said or the court said in Sisco is that probable cause doesn't turn on the guilt or innocence of a particular conduct, but rather on the degree of suspicion that attaches to particular types of noncriminal act. So while there may be more possible explanations for the smell of marijuana that are not illegal, that doesn't ---- that doesn't necessarily override the fact that even under the recreational marijuana law in Nevada, you're not allowed to smoke while you're driving. You're not allowed to smoke in public. You're not allowed to, you know, what the Nevada scheme very clearly says by statute that these protections only apply, that they apply only to the extent that the patient with the valid card engages in the medical use of marijuana in accordance with the provisions of this chapter justified to mitigate the symptoms or effects of a person's chronic or debilitating medical condition. Now, the defendant here was in the passenger seat, and what he explained was he was drunk, he was high, and he'd been doing cocaine earlier and wasn't in any condition  Now, that is not ---- that is simply not consistent with the engaging in the medical use of marijuana in accordance with the provisions of the law. Can you address for a moment, so that I'm clear about it, how the warrant comes into this case? They take Mr. White out of the car. Yes. Take the driver out of the car, too. Do they then search it, or do they then apply for a warrant? They then search it. And so ---- and then they subsequently get a warrant. Yes. So focus on that first search for a second. Sure. In which, as I understand it, the weapon is discovered. Yes. The search was ---- the search was based on the officer's smell of marijuana coming from the car. So it's assumed that he had probable cause to believe that. Okay. Yes. And that was the search in which they found the gun. And that was a warrantless search. Now, in fact, in State v. Lloyd, these were local officers applying local law at the time, and they said that the smell of marijuana justifies or provides probable cause to a search. They also said ---- Under State? So were they searching for a State violation or a Federal violation? In State v. Lloyd, it was a State case. Here. Here. In here. Well, at the time ---- It was a State. Of course it was a State case. Right. Yes. They're ---- Are the officers have probable cause to suspect there's a Federal crime that's occurred or a State crime? I know the gross deputization issue isn't raised. I'm just asking the question. Yes. It isn't raised. And I think that it's a State crime. I mean, I assume that they were ---- They've argued that it is.  I assume that they were at the time looking for a State crime. I'm still interested in why the automobile exception applies in this case. Okay. The people are out of the car. Sure. They're handcuffed. Isn't this very close to the Supreme Court's decision that says the automobile ---- when the reasons for the automobile exception aren't present because nobody can reach in the car and destroy evidence or grab a weapon, that you have to get a warrant? You know, Carroll said the original Carroll decision that created the automobile exception said that because cars are mobile. Right. That's the original decision. And ---- The Supreme Court's refined that. Well, and ---- Not every ---- The car is not a Fourth Amendment-free zone. The Supreme Court has said when the reasons for the exception aren't there. I'm not sure your opponent argues this. So it may not ---- And I apologize that I'm not ---- I don't know which case you're referring to. There is ---- I will say that I was just briefing a case last week, and I've been trying to come up with the name of it. There is a Ninth Circuit case. Well, there's a Supreme Court case that came out of Arizona in which this ---- Oh, and that one was about the search incident to arrest. Right. Right. But that ---- This is a search incident to arrest, is it not? No. The search ---- That was about the search of the individual's person. No, this is a search about the car. It's a search of the car. And my question is a simple one. Once you remove the person from the car, let's assume you've taken them back to the police station and put them in a cell. Can you then search the car without a warrant? In fact, once the car has been ---- if the car has been lawfully seized, you can. And as I was saying, there's a case ---- I'll file a 20-HL letter because I was literally briefing this a week ago. It's not an issue in this case. What's troublesome about this case? I'm not sure it gets Mr. White out of jail, is that he stopped for the wrong reason. He's not a ---- He's not the person they're looking for. The police discern what at most I think is going to be a misdemeanor. And then all of a sudden, his car is searched. And they discover, of course, that he's breaking another law. And so it's a series of things that add up to a difficult situation. If I could just make two points on that. The initial ---- when they ran the initial license plate and they got this Don's warrant hit because apparently Eddie Jackson had been using Mr. White's Social Security number and it was Mr. Jackson that had the Don's warrant, they figured out ---- and the district court made a specific factual finding about this. They figured out as soon as they identified Mr. White in the car and ran Mr. White, they identified very quickly that he was not Mr. Johnson, he was not the person with the Don's warrant, but he did have misdemeanor warrants out for him, right? So the initial hit was because his Social Security number had been tied to an individual with Don's warrant, and within a matter of just a couple of minutes, I mean, I think it was from 859 to 902, they realized that this wasn't Mr. Johnson but that Mr. White himself had warrants out. The district court made factual findings that they smelled the marijuana coming from the car and that gave them probable cause to do the search. And I will say there is a Ninth Circuit case that says that if probable cause that the automobile exception applies, even after, for example, if the automobile is towed to the Metro towing lot, if they had probable cause to search the car at the time of the stop, that continues even after it's in, you know, after it's in the towing facility because the automobile exception is broad. I think... I want to ask you about a separate topic and your time is running out. What do we do with the Edling problem here? I think that Edling is a problem. The difference, the distinction that I would make in Edling is that Edling was talking about unarmed robbery. And robbery with the use of a deadly weapon as a matter of Nevada state law requires proof beyond a reasonable doubt. I understand that argument. We've had a bunch of cases since, maybe they're not precedential, that have rejected that argument. The issue that I have with that is that the definition of deadly weapon includes anything that is capable of emitting tear gas. And that just seems to me not the same. The definition of deadly weapon is used as immaterial. I just have problems fitting that construct into what the Supreme Court has said is required for the use of force. I will say that I — there's another — there's another provision of the definition of deadly weapon that's not the two — that kind of the two main ones are something that is inherently deadly or something in the way that it's used can be deadly. There are a couple of other definitions, the tear gas one and a couple of other things. I briefed one of the other issues in a case that was argued about four months ago. The tear gas one, I haven't researched it. I haven't looked it up. It certainly wasn't raised in this appeal. Let me ask this question now. But still, the crime is use of a deadly weapon in the commission of a robbery, right? It's robbery with the use of a deadly weapon, yes. So you still have to have a robbery? Yes. Is that right? Yes. And Edling says the Nevada statute is not a generic robbery. Right. How do you get around that in the deadly weapon case? Because — because robbery with the use of a deadly weapon, what Edling said is that robbery doesn't qualify under the enumerated offenses clause because of the new definition of extortion. But it doesn't deal with the force element. And it doesn't — and it doesn't apply to — it doesn't fall under the force clause. But could you commit robbery in Nevada by bringing a gun to a house and saying, if you don't let me in, I'll shoot out the windows? Sure. I've — And so therefore — Yeah. Would that be generic? Would that be generic robbery? I think — I think it likely would. The only — the only response that I would give to that is that what the Supreme Court said in Duenas-Alvarez is that the categorical approach is not an invitation to legal imagination. And a defendant who's seeking to rely on it has to either point to his own case or some case where it actually has been applied in this non-categorical matching way. And I don't know of any Nevada case where if someone was convicted — Do we, when the statute says against property is — you can use violence against property, right? Right. So doesn't that make it non-generic robbery? Non-generic robbery, yes. Now, my — my position — I mean, really, the only — the answer that I have is that what this Court has said is once you're — once you're talking about a deadly weapon, now you're in the elements clause, because the use of a deadly weapon in conscience furtherance of a crime includes at least the threatened use of violent Johnson-type force. Well, that's — that's the reason I'm focused on the tear gas. It's like if you have a, you know, can of mace in your purse, that that's, as I read in Nevada law, equivalent to a loaded firearm. And I'm not — why does that meet the force requirement of Johnson? Two points to that. First of all, having it in the purse, this isn't like Parnell or Giozzo's. It has to be used in conscience furtherance. If you are actually using tear gas to commit a robbery, I believe that under Castleman, under the Supreme Court's decision in Castleman, that that — I mean, that the use of tear gas on someone is sufficient to — to create bodily injury or harm. And so that would actually qualify. This isn't — you know, in Parnell, it was about — I think Parnell was Massachusetts robbery, which you can be convicted of armed robbery if you happen to have a gun in your back pocket, even if the victim doesn't see it. But under Nevada law, it has to be used in conscience furtherance of the commission of the crime. And if the thing that you're using is either something that is inherently designed to create bodily force or the way that it's used is likely to cause bodily force, or in the example of tear gas that you give, I believe the Supreme Court would say — I mean, if you shoot somebody with tear gas, you know, or threaten to, you are threatening to injure them. I mean, tear gas creates an injury. So that's — By the way, the case I was referring to doesn't make any difference here. State versus Gant? Yes. The United States Supreme Court case, which — Yes. And that was — I commend to your reading. You don't have to argue it. Yeah. No. I am — and I am familiar with that case. But I will follow up with that Ninth Circuit case that I was talking about in the 2018. Thank you, counsel. Thank you. We used a lot of your time, Ms. Bliss, so you may have two minutes for rebuttal. Thank you very much. Your Honor, yes, I would submit that Edling does apply not to the assault. I think we lose on that. But certainly to the robbery. The 193 under Nevada statutes, it's an enhancement on the weapon. And I would also show the Court, it's not published, but about three weeks ago, a Ninth Circuit panel on identical statute in Bell. Right. It's not presidential.  But I'm just saying another panel said that Edling does apply. All the panel did was vacate and remand for further — in Bell. Yes. Well, just vacate and remand for further consideration in light of Edling. Yes. So it didn't — even if it — even as a nonpresidential matter, it didn't decide the issue. It just asked the district court to decide it. Yes, Your Honor. And I would submit that that's probably what should happen here at the very least. Using a weapon is not an element. And use — even if it were in Nevada, it can arise to negligence. Now, back to the marijuana and the odor. Your Honor, Arizona, there's CISCO I and CISCO II. Neither of them say that odor in and of itself is enough. The CISCO II case, which is the 2016 case, is an odor plus. There have to be more circumstances. The Arizona Supreme Court did not decide whose burden it is in that case. But this Court must apply the Fourth Amendment as it was intended, and that is the The government has to show that there was probable cause. The Fourth Amendment protects against governmental intrusion. It does not put an affirmative duty on any citizen or individual to show the plus part. I would also carefully look at those Nevada cases, look at the Alaska case. There's also a Massachusetts case. The cases, the courts are struggling with this issue because odor in and of itself simply cannot be enough for probable cause. Finally, I would show this Court that, as Your Honor expressed concern over the facts here, the driver actually was inside the Walgreens. She was never arrested. It was only Mr. White who was in the passenger seat. The government seems to suggest that because he was drunk and he was in the passenger seat, there's something, aha, there's something wrong here. No. He was being responsible by not driving the car. He was sitting — Sotomayor's argument, because it means the car was still mobile and an unarrested driver could take it away, and that suggests that the automobile exception would apply. There's no way it could have been mobile because they had blocked it in. The testimony is replete with that. Okay. And the driver wasn't even in there. Mr. White was taken out of the car. And I would also show the Court that this is — But you didn't make that argument. You didn't make the Warren argument. Your argument is that there was no probable cause. To search the vehicle under the automobile exception. That's right. And there was also — You've well exceeded your extra time. So if you could wrap up in a sentence or two. I would just carefully look at that record on the facts. The Social Security number didn't even match. That's going to be at EOR247. The basis for the search of the car, the warrantless search, which it clearly was, comes from the testimony of Officer Shard. Again, they tell you why they searched it. Because they smelled pot. And that's just not enough. Thank you so much for the extra time, Your Honor. The case just argued is submitted. We appreciate the arguments of both counsel. The next argued case is United States v. Inclam.
judges: Tashima, Graber, Hurwitz